Duncan, J.
delivered the opinion of the Court.
Patience Evans, as a person likely to become chargeable, was removed by an order of two justices of the peace, from Bristol to Philadelphia. The guardians of the poor appealed from this order to the Court of Quarter Sessions of the city and county of Philadelphia, who quashed the order of removal, and the proceedings are brought into this Court on certiorari.
By the case stated, it appears that Patience Evans, a single unmarried woman, acquired a settlement in the city of Philadelphia, by having served there as an indented servant for more than one year, and that she had not since gained any other settlement; that, being pregnant of a bastard child, her mistress, Mary Peacock, on the 19th March, 1818, removed her into Bristol, in the county of Bucks, from German-town, her place of residence, for the purpose of her there lying in. She placed her with Sarah Armstrong, promising to pay her two dollars twenty-five cents per week for her expenses during her lying-in. On the 28th March, Patience *565 Evans was removed by this order to Philadelphia, and at the Alms House there, was delivered of a female bastard child. She was, at the time of her removal, not actually chargeable, and her mistress was of ability to support her.
The order of the Quarter Sessions would have been quite correct as to the child, had the facts 'stated, and those on which the opinion is founded, corresponded. The case states that the child was born in Philadelphia, after her removal. The opinion of the Court is given under the mistaken impression, that the child was born in Bristol, before the removal of the mother; and that both mother and child, or the child alone, was removed ; whereas the mother alone was removed. An illegitimate child is settled' in the place of its birth ; it is considered as the offspring of no one; there exists no privity of blood between it and its reputed parents, through which it can lay claim to their settlement, and be settled in the place of its birth, as lawful children are whose parents have no settlement. There are some exceptions to this ; as where the woman with child is removed out of one township into another by collusion with its officers, or it is born pending an order of removal appealed from, it is then settled in the township against which judgment is given, or that to which the removal is made where it acquiesces without appeal; or where the child is born, while the mother is in actual custody of the law, as when she is in the county goal, or house of correction, here it follows the settlement of the mother, or if that cannot be known, it is provided for in the township where she was apprehended. But the only question on the appeal, was on the removal of the mother: the only question here, is on the removal of the mother. She had not, at the time of removal, become actually chargeable to Bristol; and it is urged on the part of the guardians of the city, that a servant with child, her mistress being of ability to support her, is not removeable until she become an actualcharge. But this woman was on the eve of her delivery ; was removed into Bristol, with a view .that she might there be delivered. She was separated from her mistress by her consent; she was not in the service of her mistress, living with a single woman ; a person of substance in this situation, is not removable. Nor is one liable to be torn from her parents, whatever her condition in life may be, and however far removed from being chargeable to the township. Nor is a servant in the service of her mas *566 ter, forming a part of his establishment, and residing with hjm? when such master is able to support her, and does supPort ^er* ^ slng^e woman servant being with child, is set-tied not to be a good cause of removal from the service of her master. The King v. Ogleworth, Burr. S. C. 302. 304, where a servant who had contracted to serve his master for three years at so much per week, was removed during the time, and while he was actually in his masters service. The Chief Justice there put an end to the argument on the nature of the contract, by saying, “ how could the justices remove him out of the service; it appears that the man was actually.in the service at the time of the removaland the order was quashed. To remove while the servant was in actual service of a master capable of supporting her, on the ground that the servant must afterwards become a charge, is ' not to be supported; because it would operate as a dissolution of the contract, and a discharge of the indenture against the consent of both parties, and while both were actually performing their contracts ; besides, in that way a township might prevent a settlement by service, by removing shortly before the end of the year. A seryant has not a right to reside in another township upon his master’s residence, when he becomes likely to be chargeable, and, therefore, may be removed to his place of settlement. But a servant residing with his master, has a right there to reside until he becomes actually chargeable, and, until he becomes an actual charge, cannot be removed from his master. Whenever this question has been discussed, it has always turned on the point of the woman being in actual service and residing with the master ; and no case occurs (at least with all the research I have been able to make I have found none,) in which, where she was out of the service, it has ever been made a question, that she was not, in this situation, removable. There is no provision in any act, empowering justices of the peace to remove to his master, a servant likely to become chargeable, or that has become chargeable; provision has been made in other cases. Husbands, in a summary manner, are compellable to make provision for their wives ; parents for their children ; and children for their parents, by the 29th and 30th sections of the general act of 9th March, 1771, for the relief of the poor, 1 Sm. Laws, 332, and by the act for consolidation and amendment of the poor laws, so far as relates to the city#of *567 - Philadelphia, of 29th March, 1803, 4 Sm. Laws, SO, and by act of 31st March, 1812, 5 Sm. Laws, 891. How far the mistress may be responsible for the lying-in expenses and „ : , ... . . \ , . , , support oi the child, is not a question now to be decided ; she is not before the Court; her liability, and its extent, is for another forum. We are not without decisions in all our Courts to guide us on the only question, the removal of Patience Evans. A slave manumitted, has a settlement in the township in which his master resides, which is bound, in the first instance, to support him, though it may have a remedy over against the master, or his estate. Overseers of Forks v. Overseers of Catawissa, 3 Binn. 32. He is considered, in this respect, as an indented servant; the township is bound to support him in the first instance; the overseers or guardians, may have their remedy against the-master. How is the pauper to gain immediate relief? He cannot wait the event pf legal proceedings against the master, if the master is not disposed to support him ; turns him loose on the world ; is insolvent ; removed to a distance ; perhaps out of the State; he is not, in a Christian country, to perish for lack of food. In accordance with the preamble in Forks v. Catawissa, is the provision of the 28th section of the' act of March, 1803, already referred to : ‘‘if it shall appear, that any negro, or mulatto, shall have been liberated after he attains the age of 28 years, or has never been legally manumitted, in such case, the overseers of the poor to whose place or township he shall be removed, shall, and may recover from his master, his heirs, executors, or administrators, having assets, all the costs and charges arising from relief or removal, .who shall give security for the future maintenance of such negro,” &c.
r The overseers of Bristol were not to wait until she had been delivered, and thus her child, by its birth, obtained a settlement there; it was their duty to remove her to prevent this. The inquiry was, is she likely to become chargeable ? not, who was her master or mistress ? have they ability to refund the lying-in expenses ? Of this they were not to run any risk. The rule must be the same, if the mistress resided at Erie. They could obtain no order to remove her to her mistress ; she was uncertificated ; a woman about to be delivered of a bastard child ; of no substance ; a servant not actually in service ; brought into the township for the very purpose of being delivered. Under the express words of the several *568 acts, she was a person likely to become chargeable ; the only course was to remove her to her place of settlement, to that district to which she was alone responsible, for the- purpose of obtaining relief under the acts for the relief of the poor.
The question is not before the Court as to the liability of Stress- or its extent. How far she is liable ; how long she continues liable for the support of the bastard child; whether only during the continuance of the indenture, a time which might be added by the Court of Quarter Sessions, or during the period of nurture, or for the life of the child, or would be absolved from all liability on the death of the servant, during the time she was bound to her, are questions deserving much consideration. A person in this situation, likely to cast a burden on the township, to fix it with the support of a bastard child, exposes thus the township to the likelihood of a charge, the ultimate support of the child, and is one likely to become chargeable, and was, therefore, properly removed.
The order of removal must, therefore, be confirmed, and the order of the Quarter Sessions quashed.
Order of the Quarter Sessions quashed.